In the United States District Court
for the District of Kansas
at Kansas City

| | |
|---|---|
| Tiffany Palomo, | |
| *On behalf of herself and those similarly situated*, | Case No. |
| | Complaint – Class Action |
| Plaintiff, | |
| v. | |
| GMRG ACQ1, LLC; Michael Cherney; Victor Heutz; Steve McDermott; Chad Magner; Doe Corporation 1–10; John Doe 1–10; | Jury Demand Endorsed Hereon |
| Defendants. | |

## Class and Collective Action Complaint

1.      Tiffany Palomo, on behalf of herself and similarly-situated individuals, brings this action against Defendants GMRG ACQ1, LLC; Michael Cherney; Victor Heutz; Steve McDermott; Chad Magner; Doe Corporation 1–10; and John Doe 1–10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the Nebraska Wage and Hour Act ("NWHA"), Neb. Rev. Stat. Ann § 48-1201 *et seq.*, the Nebraska Wage Payment and Collection Act ("NWPCA"), Neb. Rev. Stat. Ann § 48-1228 *et seq.*,  and Neb. Rev. Stat. Ann § 20-148 for unjust enrichment.

**PRELIMINARY STATEMENT**

2.      Upon information and belief, Defendants operate approximately 145 Pizza Hut store locations in nine states including Kansas, and Nebraska.

3.      Upon information and belief, Defendants operate approximately 2 Pizza Hut store locations in Nebraska ("GMRG Pizza Hut stores").

4.      As part of their ownership and operation of the GMRG Pizza Hut stores, Defendants employ delivery drivers who use their own automobiles to deliver pizza and other food items to their customers.

5.      Upon information and belief, instead of reimbursing their delivery driver employees for the actual costs of the business use of their vehicles or at the IRS standard business rate, Defendants have violated the Fair Labor Standards Act and Nebraska's wage and hour laws by using a flawed method to determine reimbursement rates that provides such an unreasonably low rate that the drivers' unreimbursed expenses cause their wages to fall below the legally-mandated minimum wage for all hours worked.

6.      Defendants also improperly deducted the costs for work required attire, including work shoes, from delivery drivers' paychecks. This caused delivery drivers' wage rates to drop below minimum wage.

7.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and Nebraska law by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

8.      Plaintiff seeks to represent the delivery drivers who have worked at the GMRG Pizza Hut stores in Nebraska.

9.      All delivery drivers at the GMRG Pizza Hut stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

10.      Accordingly, Plaintiff brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § *et. seq.* to recover unpaid minimum wages owed to Plaintiff and similarly situated delivery drivers employed by Defendants at the GMRG Pizza Hut stores.

11.      Plaintiff also brings this lawsuit as a collective action under the FLSA to remedy any and all violations of the FLSA wage and hour provisions by Defendants at their GMRG Pizza Hut store.

12.      Plaintiff also brings this lawsuit on behalf of herself and similarly situated current and former delivery drivers in Nebraska, pursuant to Federal Rule of Civil Procedure 23, to recover unpaid minimum wages owed to Plaintiff and similarly situated delivery drivers employed by Defendants at the GMRG Pizza Hut stores.

13.      Plaintiff also brings this lawsuit on behalf of herself and similarly situated current and former delivery employed by Defendants at the GMRG Pizza Hut stores to remedy violations of the NWHA and the NWCPA by Defendants at their GMRG Pizza Hut stores.

## JURISDICTION AND VENUE

14.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

15.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Nebraska law claims.

16.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside and/or conduct business in this district, GMRG ACQ1, LLC maintains its principal place

of business in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

**PARTIES**

**PLAINTIFF**

**Tiffany Palomo**

17.     Plaintiff Tiffany Palomo is a resident of Nebraska.

18.     Plaintiff began working for Defendants at a GMRG Pizza Hut store in Scotts Bluff, Nebraska from in November 2020, and as of the date of the filing of this Complaint is still currently employed by Defendants at the GMRG Pizza Hut store in Scotts Bluff, Nebraska.

19.     During her employment, Plaintiff, among other duties, used and continues to use her own automobile to deliver pizza and other food items to customers.

20.     During her employment, Plaintiff was and continues to be an "employee" of all of the Defendants as defined in the FLSA and Nebraska wage law.

21.     Plaintiff has given written consent to join this action.

**DEFENDANTS**

**GMRG ACQ1, LLC**

22.     Defendant GMRG ACQ1, LLC d/b/a Grand Mere Restaurant Group ("GMRG") is a limited liability company headquartered at 10880 Benson Drive, Suite 2320, Overland Park, KS 66210.[1]

23.     GMRG is the entity that operates the Defendants' Pizza Hut stores.[2]

24.     Upon information and belief, GMRG owns approximately 145 Pizza Hut stores across Kansas, Oklahoma, Texas, Montana, Utah, Wyoming, Colorado, Nebraska, and Missouri.[3]

25.     Upon information and belief, GMRG owns 2 Pizza Hut stores in Nebraska.[4]

26.     GMRG is the entity that appears on Plaintiff's paystubs for work she completes for GMRG Pizza Hut stores.

27.     GMRG has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28.     GMRG has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

29.     At all relevant times, GMRG maintained and continues to maintain control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

30.     GMRG is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and Nebraska law.

_____

[1] Home - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[2] About Us - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[3] About Us - Grand Mere Restaurant Group (gmrestaurantgroup.com); Locations - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[4] Locations - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).

31.    At all relevant times, GMRG has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

32.    GMRG's gross revenue exceeds $500,000 per year.

**Michael Cherney**

33.    Defendant Michael Cherney is the co-founder of GMRG.[5]

34.    Michael Cherney is the CEO of GMRG.[6]

35.    Michael Cherney is "primarily responsible for the strategic growth, financial, and real estate aspects of the business."[7]

36.    Michael Cherney "serves on the International Franchisee Board of Pizza Hut (IPHFHA)."[8]

37.    Michael Cherney meets the definitions of "employer" set forth in the FLSA and under Nebraska law because he owns and operates the GMRG Pizza Hut stores, serves as co-founder and CEO of GMRG, ultimately controls significant aspects of the GMRG Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of the employees. 29 U.S.C. § 203(d).

38.    At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has had financial control over the operations at each of the GMRG Pizza Hut stores.

---

[5] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[6] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[7] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[8] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).

39.     At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has a significant role in numerous aspects of the GMRG Pizza Hut stores' day to day operations.

40.     At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has had control over the GMRG Pizza Hut stores' pay policies.

41.     At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has had power over personnel and payroll decisions at the GMRG Pizza Hut stores, including but not limited to influence over delivery driver pay.

42.     At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has had the power to hire, fire and discipline employees, including delivery drivers at the GMRG Pizza Hut stores.

43.     At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has had the power to stop any illegal pay practices that harmed delivery drivers at the GRMG Pizza Hut stores.

44.     At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has had the power to transfer the assets and liabilities of the GMRG entities.

45.     At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has had the power to declare bankruptcy on behalf of the GMRG entities.

46.     At all relevant times, by virtue of his role as Co-founder and CEO of, Michael Cherney has had the power to enter into contracts on behalf of each of the GMRG Pizza Hut stores.

47.     At all relevant times, by virtue of his role as Co-founder and CEO of, Michael Cherney has had the power to close, shut down, and/or sell each of the GMRG Pizza Hut stores.

7

48.     At all relevant times, by virtue of his role as Co-founder and CEO of GMRG, Michael Cherney has had authority over the overall direction of each of GMRG's Pizza Hut stores and is ultimately responsible for their operations.

49.     The GMRG Pizza Hut stores function for Michael Cherney's profit.

50.     Michael Cherney has influence over how the GMRG Pizza Hut stores can run more profitably and efficiently.

**Victor Heutz**

51.     Defendant Victor Heutz is the Co-founder of GMRG.[9]

52.     Victor Heutz is the President of GMRG.[10]

53.     Victor Heutz "oversees all store-level and non-store level operations and overall organizational performance" of GMRG.[11]

54.     Victor Heutz meets the definitions of "employer" set forth in the FLSA and Nebraska law because he owns and operates the GMRG Pizza Hut stores, serves as Co-founder and President of GMRG, ultimately controls significant aspects of the GMRG Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of the employees. 29 U.S.C. § 203(d).

55.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had financial control over the operations at each of the GMRG Pizza Hut stores.

---

[9] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[10] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[11] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).

56.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has a significant role in numerous aspects of the GMRG Pizza Hut stores' day to day operations s.

57.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had control over the GMRG Pizza Hut stores' pay policies.

58.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had power over personnel and payroll decisions at the GMRG Pizza Hut stores, including but not limited to influence over delivery driver pay.

59.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had the power to hire, fire and discipline employees, including delivery drivers at the GMRG Pizza Hut stores.

60.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had the power to stop any illegal pay practices that harmed delivery drivers at the GMRG Pizza Hut stores.

61.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had the power to transfer the assets and liabilities of the GMRG entities.

62.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had the power to declare bankruptcy on behalf of the GMRG entities.

63.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had the power to enter into contracts on behalf of each of the GMRG Pizza Hut stores.

64.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had the power to close, shut down, and/or sell each of the GMRG Pizza Hut stores.

65.     At all relevant times, by virtue of his role as Co-founder and President of GMRG, Victor Heutz has had authority over the overall direction of each of GMRG Pizza Hut stores and is ultimately responsible for their operations.

66.     The GMRG Pizza Hut stores function for Victor Heutz's profit.

67.     Victor Heutz has influence over how the GMRG Pizza Hut stores can run more profitably and efficiently.

**Steve McDermott**

68.     Defendant Steve McDermott is the Vice President of Finance of GMRG.[12]

69.     Steve McDermott "oversees the finance, accounting, analysis and reporting functions" of GMRG.[13]

70.     Steve McDermott meets the definitions of "employer" set forth in the FLSA and Nebraska law because he owns and operates the GMRG Pizza Hut stores, serves as Vice President of Finance of GMRG, ultimately controls significant aspects of the GMRG Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

71.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had financial control over the operations at each of the GMRG Pizza Hut stores.

---

[12] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[13] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).

72.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has a role in significant aspects of the GMRG Pizza Hut stores' day to day operations.

73.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had control over the GMRG Pizza Hut stores' pay policies.

74.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had power over personnel and payroll decisions at the GMRG Pizza Hut stores, including but not limited to influence over delivery driver pay.

75.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had the power to hire, fire and discipline employees, including delivery drivers at the GMRG Pizza Hut stores.

76.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had the power to stop any illegal pay practices that harmed delivery drivers at the GMRG Pizza Hut stores.

77.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had the power to transfer the assets and liabilities of the GMRG entities.

78.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had the power to declare bankruptcy on behalf of the GMRG entities.

79.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had the power to enter into contracts on behalf of each of the GMRG Pizza Hut stores.

80.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had the power to close, shut down, and/or sell each of the GMRG Pizza Hut stores.

81.     At all relevant times, by virtue of his role as Vice President of Finance of GMRG, Steve McDermott has had authority over the overall direction of each of the GMRG Pizza Hut stores and is ultimately responsible for their operations.

82.     The GMRG Pizza Hut stores function for Steve McDermott's profit.

83.     Steve McDermott has influence over how the GMRG Pizza Hut stores can run more profitably and efficiently.

**Chad Magner**

84.     Defendant Chad Magner is the Vice President of Operations of GMRG.[14]

85.     Chad Magner "has been in Operations with the Pizza Hut Brad for 37 years."[15]

86.     Chad Magner meets the definitions of "employer" set forth in the FLSA and Nebraska law because he owns and operates the GMRG Pizza Hut stores, serves as Vice President of Operations of GMRG, ultimately controls significant aspects of the GMRG Pizza Hut stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

87.     At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had financial control over the operations at each of the GMRG Pizza Hut stores.

---

[14] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).
[15] Our Team - Grand Mere Restaurant Group (gmrestaurantgroup.com) (last visited 05/06/2022).

88.    At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has a role in significant aspects of the GMRG Pizza Hut stores' day to day operations.

89.    At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had control over the GMRG Pizza Hut stores' pay policies.

90.    At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had power over personnel and payroll decisions at the GMRG Pizza Hut stores, including but not limited to influence of delivery driver pay.

91.    At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had the power to hire, fire and discipline employees, including delivery drivers at the GMRG Pizza Hut stores.

92.    At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had the power to stop any illegal pay practices that harmed delivery drivers at the GMRG Pizza Hut stores.

93.    At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had the power to transfer the assets and liabilities of the GMRG entities.

94.    At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had the power to declare bankruptcy on behalf of the GMRG entities.

95.    At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had the power to enter into contracts on behalf of each of the GMRG Pizza Hut stores.

96.     At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had the power to close, shut down, and/or sell each of the GMRG Pizza Hut stores.

97.     At all relevant times, by virtue of his role as Vice President of Operations of GMRG, Chad Magner has had authority over the overall direction of each of the GMRG Pizza Hut stores and is ultimately responsible for their operations.

98.     The GMRG Pizza Hut stores function for Chad Magner's profit.

99.     Chad Magner has influence over how the GMRG Pizza Hut stores can run more profitably and efficiently.

**Doe Corporation 1-10**

100.    Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the GMRG Pizza Hut stores, and qualify as "employers" of Plaintiff and the delivery drivers at the GMRG Pizza Hut stores as that term is defined by the FLSA and Nebraska law.

101.    Upon information and belief, Michael Cherney owns and/or operates, in whole or in part, a number of other entities that make up part of the GMRG Pizza Hut stores' operations.

102.    Upon information and belief, Victor Heutz owns and/or operates, in whole or in part, a number of other entities that make up part of the GMRG Pizza Hut stores' operations.

103.    Upon information and belief, Steve McDermott owns and/or operates, in whole or in part, a number of other entities that make up part of the GMRG Pizza Hut stores' operations.

104.    Upon information and belief, Chad Magner owns and/or operates, in whole or in part, a number of other entities that make up part of the GMRG Pizza Hut stores' operations.

105.    Upon information and belief, the franchisor, Pizza Hut stores Pizza, may also be liable as an employer of the delivery drivers employed at GMRG Pizza Hut stores.

106.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

107.    Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the GMRG Pizza Hut stores as that term is defined by the FLSA and Nebraska law.

108.    Upon information and belief, Michael Cherney has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the GMRG Pizza Hut stores as that term is defined by the FLSA and Nebraska law.

109.    Upon information and belief, Vitor Heutz has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the GMRG Pizza Hut stores as that term is defined by the FLSA and Nebraska law.

110.    Upon information and belief, Steve McDermott has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the GMRG Pizza Hut stores as that term is defined by the FLSA and Nebraska law.

111.    Upon information and belief, Chad Magner has entered into co-owner relationships with a number of his managers and business partners, and those individuals might

also qualify as "employers" of Plaintiff and the delivery drivers at the GMRG Pizza Hut stores as that term is defined by the FLSA and Nebraska law.

112.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### CLASS-WIDE FACTUAL ALLEGATIONS

113.    During all relevant times, Defendants have operated the GMRG Pizza Hut stores.

114.    Plaintiff, and the similarly situated persons Plaintiff seeks to represent, are current and former delivery drivers at the GMRG Pizza Hut stores.

115.    All delivery drivers employed at the GMRG Pizza Hut stores over the last three years have had essentially the same job duties.

116.    When there are no deliveries to make, GMRG delivery drivers are required to work inside the GMRG Pizza Hut stores cleaning up dishes, sweeping, making boxes, filling the ice container, and completing other duties inside the restaurant as necessary.

117.    Plaintiff and similarly situated delivery drivers have been paid minimum wage minus a tip credit for the hours they worked on the road for the GMRG Pizza Hut stores.

118.    The job duties performed by delivery drivers inside the store are not related to their tip-producing duties while they are out on the road making deliveries.

119.    Delivery drivers do not complete their inside job duties contemporaneously with their delivery job duties.

120.    The delivery drivers at the GMRG Pizza Hut stores work "dual jobs."

121.    Defendants require delivery drivers at the GMRG Pizza Hut stores to provide cars to use while completing deliveries for Defendants.

122.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

123.    Defendants require delivery drivers at the GMRG Pizza Hut stores to provide cellphones to use while completing deliveries for Defendants.

124.    Defendants require delivery drivers to maintain and pay for operable cellphones to use in delivering Defendants' pizza and other food items.

125.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

126.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

127.    The GMRG Pizza Hut stores do not reimburse the delivery drivers' cellphone expenses.

128.    The GMRG Pizza Hut stores do not track or record the delivery drivers' cellphone expenses.

129.    The GMRG Pizza Hut stores do not reimburse at all for cellphone expenses.

130.    The GMRG Pizza Hut stores reimburse their delivery drivers' vehicle expenses by paying a set amount for each mile driven.

131.    Defendants' vehicle reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

132.    The GMRG Pizza Hut stores do not track or record the delivery drivers' actual expenses.

133.    The GMRG Pizza Hut stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

134.    The GMRG Pizza Hut stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

135.    The GMRG Pizza Hut stores do not reimburse their delivery drivers for the actual expenses the delivery drivers incur.

136.    The GMRG Pizza Hut stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

137.    The GMRG Pizza Hut stores did not reasonably approximate the delivery drivers' expenses.

138.    The GMRG Pizza Hut stores' reimbursement methodology does not account for or fully reimburse for all of the expenses incurred by the delivery drivers for the benefits of Defendants.

139.    The GMRG Pizza Hut stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

140.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

a.    2017: 53.5 cents/mile
b.    2018: 54.5 cents/mile
c.    2019: 58 cents/mile
d.    2020: 57.5 cents/mile

  e.  2021: 56 cents/mile
  f.  2022: 58.5 cents/mile

141. The delivery drivers at the GMRG Pizza Hut stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

142. As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Nebraska law.

143. Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the GMRG Pizza Hut stores.

144. Because Defendants paid their drivers a gross hourly wage at, or very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

145. Defendants have failed to properly take a tip credit from Plaintiff' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

146. Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

147. Defendants required Plaintiff and similarly situated drivers to buy shoes for the job.

148. The shoes Defendants required Plaintiff and similarly situated delivery drivers to buy were of a specific type, style, color, or quality mandated by Defendants.

149.    Plaintiff and similarly situated delivery drivers at the GMRG Pizza Hut stores had deductions taken from their wages to pay for "Shoes for Crews" shoes.

150.    The "Shoes for Crews" shoes were non-slip shoes designed specifically to be worn by work crews. The shoe deductions taken from Plaintiff and similarly situated drivers' wages were for the benefit of the Defendants.

151.    The shoe deductions taken from Plaintiff and similarly situated drivers' wages caused their effective hourly wage rate to drop below minimum wage.

152.    Defendants have willfully failed to pay federal and Nebraska state minimum wage to Plaintiff and similarly situated delivery drivers at the GMRG Pizza Hut stores.

## PLAINTIFF' INDIVIDUAL FACTUAL ALLEGATIONS

**Tiffany Palomo**

153.    Plaintiff works at the Pizza Hut store located in Scotts Bluff, Nebraska and has since November 2020.

154.    Plaintiff is paid minimum wage minus a tip credit for all hours worked while delivering Defendants' pizza and other food items.

155.    When Plaintiff is not delivering food, she works inside the restaurant. Her work inside the restaurant includes stocking, doing dishes, cleaning, and completing other duties inside the restaurant as necessary.

156.    Plaintiff works dual jobs.

157.    Plaintiff's inside duties are not related to her delivery duties.

158.    Plaintiff was paid $9.00 per hour for the hours she worked inside of the store from approximately November 2020 to September 2021.

159.    Plaintiff is paid at $10.00 per hour for the hours she works inside the store and has been since September 2021.

160.    Plaintiff is required to use her own car to deliver pizzas.

161.    Plaintiff is required to use her own cellphone when delivering pizzas.

162.    Defendants require Plaintiff to purchase and wear a particular type of work shoes.

163.    Plaintiff has the cost of work shoes deducted from her pay.

164.    Defendants' reimbursement policy results in Plaintiff usually receiving between $0.30 and $0.37 per mile.

165.    Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

166.    Plaintiff is required to maintain and pay for an operable cellphone to use in delivering Defendants' pizza and other food items.

167.    Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

168.    Plaintiff has purchased and continues to have to purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, has suffered and continues to suffer automobile depreciation and damage, has incurred and continues to incur costs associated with automobile financing, licensing and registration, has incurred and continues to incur cell phone and data charges, and has incurred costs for the purchase of shoes for the job, all for the primary benefit of Defendants.

169.    Defendants do not and have not tracked the actual expenses incurred by Plaintiff.

170.    Defendants do not and have not asked Plaintiff to provide receipts of the expenses she incurs while delivering pizzas for Defendants.

171.    Defendants do not and have not asked Plaintiff to provide records of cellphone expenses she incurs while delivering pizzas for Defendants.

172.    Defendants do not and have not reimbursed Plaintiff for her cellphone expenses.

173.    Defendants do not and have not reimbursed Plaintiff for the cost of her work shoes.

174.    Defendants do not and have not reimbursed Plaintiff based on her actual delivery-related expenses.

175.    Plaintiff is not reimbursed at the IRS standard mileage rate for the miles she drives while completing deliveries.

176.    Defendants do not and have not reimbursed Plaintiff based on a reasonable approximation of her expenses.

177.    In 2020, for example, the IRS business mileage reimbursement was $0.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. At the IRS standard business mileage reimbursement rate, Defendants' policy under-reimbursed Plaintiff by $0.275 per mile ($0.575 - $0.30).

178.    Plaintiff estimates that, on average, she makes 2.5 deliveries per hour and drove 2 miles per delivery. Based on Plaintiff's estimate, Defendants under-reimbursed her $0.55 per delivery ($0.275 × 2 miles), and $1.375 per hour ($0.55 × 2.5 deliveries per hour).

179.    Defendants failed to properly inform Plaintiff of the requirements for taking a tip credit.

180.    Defendants failed to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses and unlawful deductions, Defendants have taken more of a tip credit than they informed Plaintiff they would be taking.

181.    Defendants failed to pay Plaintiff minimum wage as required by law.

### COLLECTIVE ACTION ALLEGATIONS

182.    Plaintiff brings the First Count on behalf of herself and all similarly situated current and former delivery drivers employed at the Defendants' Pizza Hut stores owned, operated, and controlled by Defendants in Nebraska, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

183.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses. Plaintiff' claims are essentially the same as those of the FLSA Collective.

184.    Defendants' unlawful conduct is pursuant to a company policy or practice.

185.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

186.    Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

187.    Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

188.    Defendants are aware or should have been aware that federal law requires them to meet certain requirements for taking a tip credit from the wages of their employees.

189.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

190.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

191.    The FLSA Collective members are readily identifiable and ascertainable.

192.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of service awards upon resolution of this action.

## CLASS ACTION ALLEGATIONS

193.    Plaintiff brings the Second, and Third Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Nebraska between the date four years prior to the filing of this complaint and the date of final judgment in this matter (the "Nebraska Wage Class").

194.    Plaintiff brings the Fourth Count under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Defendants' Pizza Hut stores in the State of Nebraska between the date four years prior to the filing of this complaint and the date of final judgment in this matter

24

(the "Nebraska Unjust Enrichment Class") (together with the Nebraska Wage Class, the "Nebraska Rule 23 Classes").

195.    Excluded from the Nebraska Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Nebraska Rule 23 Classes.

196.    The number and identity of the Nebraska Wage Class members are ascertainable from Defendants' records.

197.    The number and identity of the Nebraska Unjust Enrichment Class members are ascertainable from Defendants' records.

198.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Nebraska Wage Class member are determinable from Defendants' records.

199.    All of the records relevant to the claims of the members of the Nebraska Rule 23 Classes should be found in Defendants' records.

200.    For the purpose of notice and other purposes related to this action, the names and contact information of the members of the Nebraska Rule 23 Classes are readily available from Defendants.

201.    Notice can be provided by means permissible under Rule 23.

202.    Members of the Nebraska Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

203.   There are more than 50 Nebraska Wage Class members.

204.   There are more than 50 Nebraska Unjust Enrichment Class members.

205.   Plaintiff' claims are typical of those claims which could be alleged by any member of the Nebraska Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Nebraska Rule 23 Classes in separate actions.

206.   Plaintiff and the members of the Nebraska Rule 23 Classes have all sustained similar types of damages as a result of Defendants' failure to comply with Nebraska law.

207.   Plaintiff and the members of the Nebraska Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

208.   Plaintiff is able to fairly and adequately protect the interests of the Nebraska Wage Class and has no interests antagonistic to the Nebraska Wage Class.

209.   Plaintiff is able to fairly and adequately protect the interests of the Nebraska Unjust Enrichment Class and has no interests antagonistic to the Nebraska Unjust Enrichment Class.

210.   Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

211.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

212.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

213.    Common questions of law and fact exist as to the Nebraska Wage Class that predominate over any questions only affecting Plaintiff and the Nebraska Wage Class members individually and include, but are not limited to:

a.  Whether Plaintiff and the Nebraska Wage Class members were subject to a common expense reimbursement policy that resulted in wages to drop below legally allowable minimum wage;

b.  Whether Plaintiff and the Nebraska Wage Class members are subject to a common policy that requires them to provide cellphones to use when completing deliveries for Defendants;

c.  Whether Plaintiff and the Nebraska Wage Class are subject to a policy that requires them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

d.  Whether Plaintiff and the Nebraska Wage Class incur expenses for the benefit of Defendants in the course of completing deliveries;

e.  Whether Defendants reimburse Plaintiff and the Nebraska Wage Class members for their actual expenses;

f.  Whether Defendants reimburse Plaintiff and the Nebraska Wage Class members at the IRS standard business mileage rate for the miles they drive in making deliveries;

g.  Whether Defendants reimburse Plaintiff and the Nebraska Wage Class members based on a reasonable approximation of the expenses they incurred;

h.  Whether Defendants properly reimburse Plaintiff and the Nebraska Wage Class members;

i.  Whether Defendants' uniform deductions cause Plaintiff and the Nebraska Wage Class's hourly wage rate to drop below minimum wage;

j. Whether Plaintiff and the Nebraska Wage Class are actually paid the wage rate they were promised by Defendants;

k. Whether Defendants fail to pay Plaintiff and the Nebraska Wage Class their earned wages in a timely manner; and

l. The nature and extent of class-wide injury and the measure of damages for those injuries.

214. Common questions of law and fact exist as to the Nebraska Unjust Enrichment Class that predominate over any questions only affecting Plaintiff and the Nebraska Unjust Enrichment Class members individually and include, but are not limited to:

a. Whether Plaintiff and the Nebraska Unjust Enrichment Class members are subject to a common policy that requires them to provide cars to complete deliveries for Defendants;

b. Whether Plaintiff and the Nebraska Unjust Enrichment Class members are subject to a common policy that requires them to provide cellphones to use when completing deliveries for Defendants;

c. Whether Plaintiff and the Nebraska Unjust Enrichment Class members are subject to a common automobile expense reimbursement policy;

d. Whether Plaintiff and the Nebraska Unjust Enrichment Class incur expenses for the benefit of Defendants in the course of completing deliveries;

e. Whether Plaintiff and the Nebraska Unjust Enrichment Class confer a benefit on Defendants;

f. Whether the benefit is conferred at Plaintiff and the Nebraska Unjust Enrichment Class's expense;

g. Whether Defendants avoid business expenses they would have otherwise been required to cover but for Plaintiff and the Nebraska Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

h. How much it would have cost Defendants to operate their business but for Plaintiff and the Nebraska Unjust Enrichment Class providing cars and cellphones to use to make deliveries;

i. Whether Defendants appreciate the benefit that is being conferred on them by Plaintiff and the Nebraska Unjust Enrichment Class;

j. Whether it is inequitable for Defendants to retain the benefit without payment for its value;

k. The nature and extent of class-wide injury and the measure of damages for those injuries.

215.    In recognition of the services Plaintiff Tiffany Palomo has rendered and will continue to render to the Nebraska Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

216.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

217.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

218.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

219.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

220.   Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

221.   Defendants required and continue to require Plaintiff and the FLSA Collective to work in a non-tipped capacity while being paid a tipped wage rate.

222.   By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

223.   Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

224.   As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### Count 2
**Failure to Pay Minimum Wages - Neb. Rev. Stat. Sec. 48-1201 *et seq.***
**(On Behalf of Plaintiff and the Nebraska Wage Class)**

225.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

226.   During all relevant times, Defendants were covered by the NWHA, and Plaintiff and the Nebraska Wage Class were employees within the meaning of the NWHA and were not exempt from its protections.

227.   The NWHA requires that Defendants pay Plaintiff and the Nebraska Wage Class wages at the minimum rate established by the legislature. (Neb. Rev. Stat. Ann § 48-1203).

228.   During all relevant times, the Nebraska minimum wage requirement was $9.00 per hour. (Neb. Rev. Stat. Ann § 48-1203(1)(c)).

229.    Plaintiff and the Nebraska Wage Class are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

230.    By failing to pay Plaintiff and the Nebraska Wage Class minimum wage for all hours worked, Defendants have violated Neb. Rev. Stat. Sec. 48-1203 *et seq.*

231.    As a result of Defendants' willful failure to pay Plaintiff and the Nebraska Wage Class minimum wage, Plaintiff and the Nebraska Wage Class are entitled to unpaid minimum wages, liquidated damages in the amount of unpaid minimum wages, reasonable attorneys' fees, and costs pursuant to Neb. Rev. Stat. Sec. 48-1231 *et seq*.

<u>**Count 3**</u>
**Untimely Payment of Wages – Neb. Rev. Stat. Sec. 48-1228 *et seq***
**(On Behalf of Plaintiff and the Nebraska Wage Class)**

232.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

233.    During all relevant times, Defendants were covered by N WPCA, and Plaintiff and the Nebraska Wage Class were employees within the meaning of NWPCA and were not exempt from its protections.

234.    The NWPCA requires that Defendants pay Plaintiff and the Nebraska Wage Class all wages on regular pay days designated by the employer or agreed upon by the employer and employee.

235.    Plaintiff and the Nebraska Wage Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

236.    In violating Nebraska law, Defendants acted willfully, without a good faith basis, and with reckless disregard to Nebraska law.

237.    As a result of Defendants' willful violation, Plaintiff and the Nebraska Wage Class are entitled to unpaid wages and liquidated damages, as stated in NWPCA.

### Count 4
### Unjust Enrichment
### (On Behalf of Plaintiff and the Nebraska Unjust Enrichment Class)

238.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

239.    Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cars to work for Defendants.

240.    If it were not for Plaintiff and the delivery drivers providing cars to use while making Defendants' deliveries, Defendants would have been required to rent or purchase their own fleet of vehicles.

241.    Plaintiff and the delivery drivers at the Defendants' Pizza Hut stores have conferred a benefit on Defendants by using their own cellphones to work for Defendants.

242.    If it were not for Plaintiff and the delivery drivers providing cellphones to use while making Defendants' deliveries, Defendants would have been required to purchase cellphones for their drivers' use.

243.    Plaintiff and the delivery drivers have conferred these benefits at their expense.

244.    Defendants are aware of and have accepted benefits conferred on them by Plaintiff and the delivery drivers.

245.    Defendants have appreciated the benefit conferred on them by Plaintiff and the delivery drivers.

246.    It would be unjust and inequitable for Defendants to be permitted to retain the benefits conferred on them by Plaintiff and the delivery drivers without commensurate compensation.

247.    Plaintiff and the delivery drivers are entitled to equitable restitution of all unreimbursed expenses.

**WHEREFORE**, Plaintiff Tiffany Palomo prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and her counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff Tiffany Palomo as representative of the Nebraska Wage Class and Nebraska Unjust Enrichment Class and counsel of record as Class Counsel of both Nebraska Rule 23 Classes.

E.    A declaratory judgement that the practices complained of herein are unlawful under Nebraska law.

F.    An award of unpaid minimum wages and unreimbursed expenses due under Nebraska law.

G.    An award of agreed upon wages due under the NWPCA and additional back wages under Neb. Rev. Stat. Sec. 48-1201 *et seq.*

H.    An award of restitution as a result of unjust enrichment.

I.    Liquidated damages under the FLSA and Nebraska law.

J.    An award of prejudgment and post-judgment interest.

K.    An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

L.    Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Daniel L. Doyle*
Daniel L. Doyle (Kansas Bar No. 11260)
Robert A. Bruce (Kansas Bar No. 28332)
Doyle & Associates LLC
748 Ann Ave.
Kansas City, Kansas 66101
Telephone:913-371-1930
Facsimile: 913-371-0147
*d.doyle@ddoylelaw.com*
*r.bruce@ddoylelaw.com*


Andrew R. Biller (Ohio Bar No. 0081452) (*pro hac vice forthcoming*)
Andrew P. Kimble (Ohio Bar No. 0093172) (*pro hac vice forthcoming*)
Laura E. Farmwald (Ohio Bar No. 95304) (*pro hac vice forthcoming*)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 715-8712
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*lfarmwald@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

34

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury, to be held at the Robert J. Dole Federal Courthouse in Kansas City, Kansas.

/s/ *Daniel L. Doyle*
Daniel L. Doyle